UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT C. SPRAGUE AND C. ROBIN ZIEGLER, | : | |
| Plaintiffs, | : | No. 3:18-CV-001487 (VLB) |
| | : | |
| v. | : | |
| | : | September 5, 2019 |
| SALISBURY BANK AND TRUST COMPANY, | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [ECF No. 28]

Plaintiffs Robert C. Sprague and C. Robin Ziegler bring the instant action alleging claims arising out of Defendant Salisbury Bank and Trust Company's reports to credit agencies, which concerned Plaintiffs' mortgage with Defendant. In their Amended Complaint, Plaintiffs bring four (4) claims against Defendant for its conduct, including violation of the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA"), violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA"), defamation, and infliction of emotional distress. [ECF No. 22]. Defendant now moves to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF No. 28]. For the following reasons, the motion is GRANTED.

Background

For the purposes of the motion to dismiss, the Court assumes the following facts set forth in the Amended Complaint, filed October 22, 2018, [ECF No. 22], to be true. In the Amended Complaint, Plaintiffs allege that they borrowed $109,600

1

from Defendant to purchase a multi-family home. *Id.* ¶ 6. In 2004, Plaintiffs refinanced their mortgage by borrowing $250,000 from Defendant. *Id.* ¶ 7. After Defendant initiated foreclosure proceedings against Plaintiffs in August 2011, "the [state court] ordered a Judgment In Strict Foreclosure in favor of Defendant. . . " on May 14, 2012. *Id.* ¶¶ 8-10. Plaintiffs and Defendant stipulated to a $40,000 deficiency judgment, which the state court granted on April 28, 2014. *Id.* ¶¶ 11-14.

"On or about February 15, 2016, Plaintiff Sprague ordered a credit report ('2016 Report')." *Id.* ¶ 15. Plaintiffs learned from the 2016 Report that Defendant was "reporting inaccurate information to the credit reporting agencies ["CRAs"] . . . that the mortgage on the foreclosed house was still open and payments had not been made in more than two years." *Id.* ¶ 16. "Plaintiffs notified Defendant of the error," and "[o]n March 7, 2016, Defendant sent Plaintiffs a letter[,]" which was attached to the Amended Complaint, noting the error in their report to the CRAs and stating that in their future reports they would report Plaintiff's mortgage as "closed." *Id.* ¶¶ 17-18. Defendants did not promise to report the mortgage paid in full or not to report the deficiency judgment. "Plaintiffs subsequently learned that Defendant did not correct the erroneous information until November 30, 2016." Id. ¶ 19.

From the factual record above, Plaintiffs allege, in "Count One: Violation of the [FCRA]," that Defendant, as a "furnisher" of information to CRAs, "negligently and willfully failed to perform a reasonable reinvestigation and correction of inaccurate information [and] engaged in behavior prohibited by [the] FCRA by failing to correct errors in the information that it provided to credit reporting

agencies after Plaintiffs notified Defendant of the error." *Id.* ¶¶ 20-21, 23. Plaintiffs allege that because of Defendant's failure to correct Plaintiff's credit information following Plaintiff's notification they "have refrained from applying for new credit or more favorable terms on existing credit lines and have suffered psychological, emotional, and financial harm, as well as expenses in challenging Defendant's false information." *Id.* ¶ 28.

In Count Two, Plaintiffs allege from these actions that Defendant violated CUTPA, "in that its actions were unfair and deceptive, immoral, unethical, oppressive and unscrupulous, caused substantial injury to a consumer and constitute[d] a violation of the policy of this state," causing Plaintiffs to have "suffered an ascertainable loss." *Id.* ¶¶ 29-30.

In Count Three, Plaintiffs allege that "Defendant's reporting of information that it knew to be incorrect defamed Plaintiffs. . . [and a]s a result of Defendant's defamation, Plaintiffs have suffered an ascertainable loss." *Id.* ¶¶ 29-30.

Finally, in Count Four, Plaintiffs allege that "Defendant's reporting of information that it knew to be incorrect caused Plaintiffs emotional distress. . . [and a]s a result of Defendant's infliction of emotional distress, Plaintiffs have suffered an ascertainable loss." *Id.* ¶¶ 29-30.

Plaintiffs seek compensatory damages, punitive damages for violation of 15 U.S.C. § 1681n, reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o, punitive damages and reasonable attorneys' fees pursuant to CUTPA, the costs of suit, and

"[s]uch other and further relief as at law or equity the Court may ascertain." *Id.* Plaintiffs' "claim and demand" for Relief §§ 1-7.

On November 19, 2018, Salisbury filed a Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 28], which Plaintiffs responded to on July 18, 2019, [ECF No. 43] after delay associated with Plaintiffs' three motions for extension of time to respond, [ECF Nos. 29, 31, 33], and Plaintiffs' two motions to amend the complaint, which the Court denied. [ECF No. 35, 38]. Defendant filed its Reply Brief on July 31, 2019. On August 5, 2019, Plaintiffs filed a motion for leave to file a sur-reply, [ECF No. 47], which Defendant opposed on August 19, 2019. [ECF No. 48].

### Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"

*Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Analysis

A.    Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) (Count 1)

"The Fair Credit Reporting Act. . . regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). Under Section 1681s-2, "several duties [are imposed] on those who furnish information to consumer reporting agencies [(hereinafter 'furnishers')]." *Id.* at 150-51. "Among these are duties to refrain from knowingly reporting inaccurate information, *see* § 1681s-2(a)(1), to correct any information

they later discover to be inaccurate, *see* § 1681s-2(a)(2), and to investigate a dispute filed directly with [them], *see* § 1681s-2(a)(8)." *Moorer v. U.S. Bank N.A.*, No. 3:17-cv-56 (VAB), 2018 WL 587319, at *22 (D. Conn. Jan. 29, 2018) (internal citation omitted); *Longman*, 702 F.3d at 151. Further, after a credit reporting agency notifies a furnisher of a consumer's dispute, the furnisher has a duty to investigate the disputed consumer information. *See* 15 U.S.C. § 1681s-2(b); *Reid v. Fifth Third Bank*, No. 6:15-CV-191, 2015 WL 13158511, at *3 (N.D.N.Y. April 7, 2015).

Defendant first argues that Plaintiffs' claims under the FCRA should be dismissed because they fail "to identify a proper subsection under which to assert a claim." [Dkt. 28 at 6]. Second, Defendant argues that to the extent that Plaintiffs "allege a violation of § 1681s-2(a) of the FCRA, [the claim] must be dismissed with prejudice because there is no private right of action under that subsection of the FCRA." *Id.* at 7. Further, Defendant argues that Plaintiffs fail to state a claim under § 1681s-2(b), because "Plaintiffs have not alleged that a consumer reporting agency informed Defendant of their alleged dispute." *Id.* at 9. The Court agrees with Defendant's second and third arguments and DISMISSES Count 1 of the amended complaint for the following reasons.

### 1. Inadequate Identification of the Correct Subsection

Defendant cites cases dismissing complaints that fail to identify which subsection of the FCRA the plaintiff is proceeding under. These cases are no help to Defendant, however, because each was a dismissal without prejudice to amend the complaint. Here, dismissing in this fashion is unnecessary because Plaintiffs make clear in their opposition to Defendant's Motion to Dismiss the section under

which they are proceeding, namely Section 1681s-2(b). Thus the court will analyze whether Plaintiffs state a claim under that section.

### 2. 15 U.S.C. § 1681s-2(a)

Plaintiffs' allegations that Defendant "engaged in behavior prohibited by the FCRA by failing to correct errors in the information that it provided to credit reporting agencies after those errors were brought to Defendant's attention by Plaintiffs" and "negligently and willfully failed to perform a reasonable reinvestigation and correction of inaccurate information after Plaintiffs notified Defendant of the error," [ECF No. 22 ¶ 23, 21], fit squarely under Subsection (a). Both parties agree Defendant is a "furnisher of information," 15 U.S.C. § 1681s-2(a), within the meaning of the FCRA. Further, the first allegation concerning failure to correct information would arguably violate Section 1681s-2(a)(2) ("A person who . . . has furnished to the consumer reporting agency information that the person determines is not complete or accurate . . . shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information . . . .").

Plaintiff's second allegation concerning failure to investigate would arguably violate Section 1681s-2(a)(8)(E) ("After receiving a notice of dispute from a consumer . . ., the person that provided the information in dispute to a consumer reporting agency shall conduct an investigation with respect to the disputed information."); *see also Longman*, 702 F.3d at 151.

Defendant correctly notes that there is no private cause of action under §
1681s-2(a), which Plaintiffs concede in their Opposition to Defendant's Motion to
dismiss. [ECF No. 42 at 8]. *See* Paul Barron & Dan Rosin, 1 FED. REG. REAL ESTATE
& MORTGAGE LENDING § 9:58 n. 3 (4th ed. 2019) ("Hundreds of courts have ruled there
is no private right of action for a violation of [Section 1681s-2(a)].") (collecting
cases); *see e.g. Longman,* 702 F.3d at 151 (2d Cir. 2012) ("[T]he district court
correctly concluded, as many other courts have held, that there is no private cause
of action for violations of § 1681s–2(a)."); *Moorer*, 2018 WL 587319, at \*23 (holding
Sections 1681n(a) and 1681o(a), which give consumers a private right of action
under the FCRA, "do not apply to section § 1681s-2(a)").

Under §1681s-2, Subsections (c) and (d) "combine to form an explicit bar to
such [private] actions." *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 447 (D.N.J.
2010). Under subsection (d), there can be no private enforcement "of any of the
portions of the FCRA described in paragraphs one and three of subsection (c)." *Id*.
"Paragraph one of subsection (c) refers to 'subsection (a) of this section, including
any regulations issued thereunder.'" *Id*. (citing § 1681s-2(c)(1)). Plaintiffs allege
they provided direct notice to Defendant. [ECF No. 22 ¶ 21 ("Plaintiffs notified
Defendant of the error")]. A furnisher's obligations after direct notice from a
consumer are found in Section 1681s-2(a)(8) and outlined under 16 C.F.R. § 660.4.
Because a furnisher's obligations are delineated in subsection (a)(8) and the C.F.R.
issued thereunder, the Plaintiffs cannot privately enforce Defendant's violation of
those obligations in a lawsuit. *See Corcia v. Asset Acceptance, LLC,* No. 13–CV–
6404 (JFB) (GRB), 2014 WL 3656049, at \*5 (E.D.N.Y. July 22, 2014) (holding no cause

of action existed under C.F.R. § 660.4 because it was an implementing regulation of § 1681s-2(a)(8)). A furnisher's obligations after learning of incorrect information are expressly found in Section 1681s-2(a)(2). These claims are therefore barred by the FCRA.

This Court has previously so held and dismissed private party claims brought under Section (a). *Breen v. Howard Lee Schiff, P.C.*, No. 3:11-cv-1183 (VLB), 2012 U.S. Dist. LEXIS 85340, at *10-14 (D. Conn. June 20, 2012) ("There is no private right of action for a violation of section 1681s-2(a), and individuals aggrieved by a violation must rely on state or federal officials to sue on their behalf[;] . . . therefore the Court grants Defendants' motion for judgment on the pleadings as to the Plaintiff's claim that Discover violated . . . [Section] 1681s-2(a).") (citing *MacPherson v. JP Morgan Chase Bank, N.A.*, No. 3:09cv1774 (AWT), 2010 U.S. Dist. LEXIS 79183, 2010 WL 3081278, at *4 n.6 (D. Conn. Aug. 5, 2010)).

The court construes Plaintiffs' concession that there is no private right of action as a tacit withdrawal of this claim. To the extent it is not and Plaintiffs persist in asserting claims under Subsection (a) the claims are DISMISSED with prejudice.

### 3. 15 U.S.C. § 1681s-2(b)

To the extent Plaintiffs claim that Defendant violated § 1681s-2(b), they fail to state a claim upon which relief can be granted because they do not plead that they notified a CRA of their dispute, nor that the CRA in turn notified Defendant.

Although there is a private right of action under Subsection (b), the duty to investigate is only triggered after a furnisher is notified of a dispute by a CRA:

> Unlike ... Subsection (a), . . . courts have generally allowed consumers to pursue private claims for 'willful or negligent noncompliance with Section 1681s–2(b).' *Kane v. Guar. Residential Lending, Inc.*, No. 04–CV–4847 (ERK), 2005 WL 1153623, at *5 (E.D.N.Y. May 16, 2005) (quoting *O 'Diah v. N.Y.C.*, No. 02 Civ. 274 (DLC), 2002 WL 1941179, at *13 (S.D.N.Y. Aug. 21, 2002) (collecting cases)). 'However, the duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute." *Id.* at *4 (emphasis in original). "A plaintiff proceeding under 1681s–2(b) is required to show that the furnisher was told by a credit reporting agency that the consumer's information was disputed, as opposed to being told by the consumer directly." *Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456(RC)(THK), 2006 WL 5157678, at *15 (S.D.N.Y. Feb. 28, 2006), *report and recommendation adopted*, No. 05 Civ. 3456(KMW), 2007 WL 2049566 (S.D.N.Y. July 13, 2007).

*Mendy v. JP Morgan Chase & Co.*, No. 12 Civ. 8252 (PGG), 2014 WL 1224549, at *5 (S.D.N.Y. Mar. 24, 2014)); *see also Munroe v. Nationstar Mortg. LLC,* 207 F. Supp. 3d 232, 238 (E.D.N.Y. 2016) ("To state a claim under section 1681s-2(b) of the statute, a plaintiff must allege that a furnisher received notice of a credit dispute from a consumer reporting agency."); *Salib v. I.S. Sys. Inc.*, No. 3:01-cv-1083 (JCH), 2002 U.S. Dist. LEXIS 17612, at *6 (D. Conn. July 24, 2002) (Furnisher's "obligation to investigate under the FCRA is not triggered unless a credit reporting agency, not the plaintiff, notified it of the dispute.") (citing *Young v. Equifax Credit Info. Servs. Inc.*, 294 F.3d 631, 639-40 (5th Cir. 2002).

This Court has previously so held. *Breen*, 2012 U.S. Dist. LEXIS 85340, at *16, 18 (D. Conn. June 20, 2012) ("Plaintiff has wholesale failed to allege facts which demonstrate that Discover's duty to investigate under Section 1681s-2(b) was triggered through receipt of a report from the credit reporting agency itself. . . .

Accordingly, Plaintiff's complaint does not contain enough facts to state a claim to relief that is plausible on its face for a violation of Section 1681s-2(b) and the Court therefore grants Defendants' motion for judgment on the pleadings as to Plaintiff's Section 1681s-2(b) claim.").

In addition, careful examination of the FCRA reveals that the only path to a CRA becoming aware of a dispute that might trigger Subsection (b)'s requirements is from the consumer, either directly or indirectly through a reseller. First, Subsection (b) makes explicit that the notice the CRA receives must be pursuant to Section 1681i(a)(2): "After <u>receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute</u> with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the furnisher must investigate and correct any inaccurate information provided to the CRA. *Id.* (emphasis added). 15 U.S.C. § 1681i(a)(2), cited in Subsection (b), requires the CRA to report a dispute to the furnisher within five business days "beginning on the date on which a consumer reporting agency <u>receives notice of a dispute from any consumer or reseller</u> in accordance with paragraph (1)." *Id.* (emphasis added). Subsection (a)(1) only requires the CRA to investigate a dispute if the "<u>consumer notifies the agency directly, or indirectly through a reseller, of such dispute</u>." *Id.* (emphasis added).

Thus, it is clear that to trigger the furnisher's duties to investigate and correct disputed information, the improper performance of which may give rise to a private party claim under Subsection (b), that private claimant must have reported the dispute to the CRA. *Pleznac v. Equity Residential Mgmt, LLC*, 320 F. Supp. 3d

99, 106 (D.D.C. 2018) ("To prevail on a claim against a furnisher under § 1681s-2(b), a plaintiff must show both that (1) she notified the reporting agency (here, Transunion) of the disputed credit information and that (2) the agency in turn provided notice of the dispute to the furnisher (here, Equity).") (citing 15 U.S.C. § 1681i(a), discussed above, and *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 203 (D.D.C. 2009)). "15 U.S.C. § 1681s-2(b) functions by 'making [a] disputatious consumer notify a CRA . . . .'" *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (quoted by *Phrasavang*, 656 F. Supp. 2d at 203).

Courts in this circuit have so held, and have dismissed claims by Plaintiffs who only notified the furnisher, and not the CRA:

> Section 1681s-2(b) takes effect once the reporting person 'receives notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided.' Section 1681i(a) requires a consumer reporting agency <u>that is notified by consumers that information in its files is disputed</u> to reinvestigate the current accuracy of the information or delete it and, within five business days, to notify the person who furnished it with the information of the dispute. In this case, however, <u>plaintiff did not complain to the credit reporting agency</u>. He got a copy of his credit report, saw that the negative information came from the defendant, and went directly to the defendant. The defendant therefore argues that it is not subject to suit because the notice it received of the dispute concerning the reported default, plaintiff's October 29, 2001 letter, was not sent by a consumer reporting agency and therefore was not 'notice pursuant to section 1681i(a)(2).'

*Elmore v. N. Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (emphasis added). The court continued:

> The terms of the statute are quite clear. Even assuming the existence of a private right of action for violation of Section 1681s-2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report *from the credit reporting agency.* If Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a dispute, it would have been a simple

> matter to say so. The fact that it nevertheless limited Section 1681s-2(b) is entitled to respect. Indeed, to rule for plaintiff would be to read the opening phrase of the statute – 'after receiving notice pursuant to section 1681i(a)(2) of this title' - as if the words 'pursuant to section 1681i(a)(2)' did not exist. This Court is not free to take a blue pencil to statutes of the United States.

*Id.* (emphasis in original). The court then granted Defendant's motion to dismiss the Subsection (b) claim. *Id.* at 340-41. *See also Wilson v. HSBC Bank, USA*, No. 16-cv-8405, 2017 U.S. Dist. LEXIS 219544, at *36 (S.D.N.Y. Mar. 22, 2018) ("Plaintiff fails to state a claim upon which relief can be granted . . . [because] Plaintiff '<u>fails to allege that he ever notified the credit reporting agencies of any dispute regarding the accuracy of reported information, or that the credit reporting agencies ever then notified [HSBC] of any such dispute</u>.'") (quoting *Howard v. Municipal Credit Union*, No. 05 Civ. 7488 (LAK), 2008 U.S. Dist. LEXIS 23448, at *8 (S.D.N.Y. Mar. 25, 2008) (emphasis added)); *Korzeniowski v. NCO Fin. Sys.*, No. 3:09-cv-1399 (WWE), 2010 U.S. Dist. LEXIS 10437, at *9 (D. Conn. Feb. 8, 2010) ("[15 U.S.C. § 1681s-2(b)] takes effect <u>once the consumer reporting agency receives notice</u> as required by 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided. The notice requirement is to be strictly construed; failure to abide by it means that there cannot be a claim for relief. *See Elmore*, 325 F. Supp. 2d at 340.") (emphasis added)).

Plaintiffs correctly state that at the motion to dismiss stage not all courts, in other circuits, require a plaintiff to plead part (2) by alleging that the consumer reporting agency notified the defendant furnisher. *See, e.g., Pleznac*, 320 F. Supp. 3d at 106-07 (D.D.C. 2018) ("At least one court in this district has held that, where a plaintiff plausibly alleges that they notified a reporting agency of a dispute, the

plaintiff need not allege with particularity that the reporting agency in turn notified the furnisher.").[1] Plaintiffs cite no cases in the Second Circuit so holding.

In addition, as the cases which Plaintiffs cite make clear, a party must plead part (1) by <u>alleging that they provided notice to a consumer reporting agency</u>, and it is insufficient to allege that plaintiff directly notified the furnisher. *See Pleznac*, 320 F. Supp. at 106; *see also Rayburn v. Equifax Info. Servs., Inc.*, No. 1:18-cv-03127-TCB-CMS, 2019 U.S. Dist. LEXIS 44917, at *10 (N.D. Ga. Jan. 9, 2019) ("For Plaintiffs to prevail on their FCRA claims pursuant to § 1681s-2(b), <u>Plaintiffs must allege</u> and establish <u>that they notified a consumer reporting agency that they disputed the completeness or accuracy of information in their credit reports</u> that were furnished by Defendant Barclays, [and] the CRA gave notice of Plaintiffs' dispute to Defendant Barclays as a furnisher.") (emphasis added) (cited by Plaintiffs in Plaintiff's Opposition, [ECF No. 43] at 9-10). Thus, Plaintiffs' claim fails because they only allege that they directly reported the dispute to Defendant, a furnisher of information, and not to any credit reporting agency;[2] the claim also fails because there is no allegation that the CRA in turn notified Defendant of the dispute. The Court, therefore, DISMISSES this claim with prejudice.

---

[1] *See also Himmelstein v. Comcast of the District, LLC*, 931 F. Supp. 2d 48, 55 (D.D.C. 2013) (denying motion to dismiss despite the absence of an express allegation of notice from the CRA to the furnisher).

[2] Plaintiffs state that they might establish, through more discovery, which is now closed, that the CRA reported the required information Defendant. But more discovery would not aid Plaintiffs in alleging that they notified the CRA; that knowledge, or lack thereof, is already in Plaintiffs' possession, and they failed to so plead, as required.

In sum, Plaintiffs' claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., are DISMISSED with prejudice.

B.    Preemption: Connecticut Unfair Trade Practices (C.G.S. § 42-110b, et seq.): Defamation: Infliction of Emotional Distress (Counts 2, 3, 4)

Defendant argues that Plaintiffs' state law claims should be dismissed because they are preempted by the FCRA. [ECF No. 28 at 11-12]. Plaintiffs counter that "the Court should not scrutinize [Plaintiffs'] state-law claims at all if the Court dismisses the FCRA claim." [ECF No. 43 at 12]. The Court disagrees with Plaintiffs' assertion: courts, in their discretion, have chosen to exercise supplemental jurisdiction to analyze whether the FCRA preempts state law claims even after they have dismissed the FRCA claims under 12(b)(6). *See Andresakis v. Capital One Bank (USA) N.A.*, No. 09 CIV. 08411 DAB FM, 2011 WL 846830, at *5 (S.D.N.Y. Feb. 3, 2011), *report and recommendation adopted*, No. 09 CV 8411 DAB, 2011 WL 1097413 (S.D.N.Y. Mar. 23, 2011) ("Because [plaintiff's] defamation and fraud claims are based on conduct that the FCRA regulates, and which may be preempted by that statute, the [c]ourt's exercise of supplemental jurisdiction over these claims is appropriate."); *Ryder v. Washington Mutual Bank*, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) (analyzing preemption of plaintiff's state law claims under the FCRA after finding (1) no private cause of action existed under 1681s-2(a) and (2) plaintiff failed to "allege[] a viable cause of action pursuant to [1681s-2(b)]"); *see generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966) (approving supplemental jurisdiction over state law claim where "the allowable scope of the state claim implicates the federal doctrine of preemption"); *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 936-38 (9th Cir. 2003) ("Section 1447(c)

does not mean that if a facially valid claim giving rise to federal jurisdiction is dismissed, then supplemental jurisdiction is vitiated and the case must be remanded. Once supplemental jurisdiction exists, it remains, subject to the discretionary provision for remand in section 1441. . . . Supplemental jurisdiction . . . is not destroyed by the dismissal of [Plaintiffs'] FCRA claim.").

Further, the Court agrees with Defendant that Plaintiffs' state law claims are preempted by the FCRA. Pursuant to § 1681t:

> (b) No requirement or prohibition may be imposed under the laws of any State-
>> (1) With respect to any subject matter regulated under. . .
>>> (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . .

The Second Circuit has adopted a "more literal reading of the phrase '[n]o requirement or prohibition'" to include both state statutory and common law claims. *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011); *see also Cipollone v. Liggett Group Inc.*, 505 U.S. 504 (1992) ("The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law. . . ."). Thus, Plaintiffs' claim under statute, CUTPA (CGS § 42-110b et seq.), and common law claims for defamation and infliction of emotional distress may be subject to preemption because they "relat[e] to the responsibilities of persons who furnish information to consumer reporting agencies," 15 U.S.C. § 1681t(b)(1)(F), namely, Defendant.

Plaintiffs concede that their state law claims are subject to preemption but argue that preemption should be "limited to Defendant's conduct *after* receiving notification of the dispute in early 2016, per § 1681s-2(b)." *See* [ECF No. 43 at 12] (emphasis in original). Plaintiffs cite *Ryder* and *Gallaher*[3] to support their assertion. However, the "temporal approach" used in *Ryder* is no longer applicable because it relied on the premise that § 1681h(e), another preempting section of the FCRA, acted as an exception to the general sweeping preemption of state law under § 1681t(b). *See Ryder v. Washington Mut. Bank, F.A.*, 371 F. Supp. 2d 152, 154-55 (D. Conn. 2005) ("Pursuant to [the temporal] approach, [plaintiff] could bring a claim within the scope of [§] 1681h(e) based upon [defendant's] conduct prior to [plaintiff's] dispute. . . ."). The Second Circuit has plainly negated *Ryder*'s premise by stating that § 1681h(e) is *not* an exception to the sweeping preemptions under 1681t(b)(1)(F). *Macpherson*, 655 F.3d at 47 ("Section 1681h(e) preempts *some* state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) [simply] preempts *more* of these claims.") (quoting *Purcell v. Bank of America*, 659 F.3d 622, 625 (7th Cir. 2011)) (emphasis in original).

In *Purcell*, Judge Easterbrook explained how Sections 1681t(b)(1) (F) and 1681h(e) work together:

Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same legislation also added § 1681s-2. The extra federal remedy in §1681s-

---

[3] *Gallaher* is inapposite because in that case this Court applied preemption under § 1681h(e), which was based on conduct regulated by § 1681b, namely, unlawfully obtaining Plaintiff's credit report, *not* §1681s-2. *See Gallaher v. U.S. Bank Nat'l Ass.,* Civil Action No. 3:14-cv-1877 (VLB), 2017 WL 2111593, at *7, 11 (D. Conn. May 15, 2017).

2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.

Our point is not that §1681t(b)(1)(F) repeals §1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles per hour. Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains. But, even if our understanding creates some surplusage, courts must do what is essential if the more recent enactment is to operate as designed.

The district court invoked a different canon: that a specific statute prevails over a general statute. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S. Ct. 1989, 48 L. Ed. 2d 540 (1976). As the debate between the Justices in *Radzanower* demonstrates, it can be hard to determine which statute is more specific. Is it §1681h(e), because it deals with wilful falsehoods while §1681t(b)(1)(F) does not mention scienter, or is it §1681t(b)(1)(F), because it deals with the sort of claim covered by §1681s-2, while §1681h(e) does not mention that statute? There is no answer to such a question; each statute is more specific in one respect and more general in another. The specific-over-general canon gets us nowhere and does not offer a good reason to depart from the norm that courts do not read old statutes to defeat the operation of newer ones—and using § 1681h(e) to preserve state-law claims that come within the scope of § 1681s-2 would defeat the 1996 decision that administrative action rather than litigation is the right way to deal with false reports to credit agencies. . . . The judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for the Bank on all of Purcell's claims, state and federal alike.

*Purcell*, 659 F.3d at 625-26 .

In *Galper*, the Second Circuit cited and agreed with Judge Easterbrook, restating the role of § 1681t(b)(1)(F) as a provision that focuses on "the preemption of laws that regulate the *responsibilities* of persons who furnish information to consumer reporting agencies." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 447-49 (2d Cir. 2015) (emphasis in original) (holding "§ 1681t(b)(1)(F) preempts <u>any recovery for damages based on allegations of erroneous or otherwise improper furnishing [of information to consumer reporting agencies] - regardless of the particular statute or common law theory [asserted].</u>") (emphasis added); *see also Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002) ("While Congress did not specifically provide in the 1997 [sic] amendments that section 1681t supercedes 1681h, it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action 'relating to the responsibilities of persons who furnish information to consumer reporting agencies.' Any other interpretation would fly in the face of the plain meaning of the statute. The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.") (quoting *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001)).

All of Plaintiffs' state law claims arose from the same conduct that gave rise to their FCRA claims. Specifically, in each state count Plaintiffs reassert the same

factual allegations first alleged in their FCRA claim. [ECF No. 22]. These state law claims are thus plainly preempted by the FCRA because they solely involve the "responsibilities under Section 1681s-2 of "persons who furnish information to consumer reporting agencies." *See* § 1681t(b)(1)(F); *Macpherson*, 655 F.3d at 46-48 (holding state law claims arising out of allegations of false reporting, including defamation, are preempted by the FCRA); *Galper*, 802 F.3d at 447-49 (

same); *Purcell*, 659 F.3d at 626 (same); *Arnold v. Navient Solutions, LLC,* No. 1:17-CV-1277 (FJS/DJS), 2018 WL 6671542, at *3 (N.D.N.Y. Dec. 19, 2018) ("Here, Plaintiff's allegations concern Defendant's responsibilities as a furnisher, including both reporting accurate information and complying with obligations to investigate disputed debts; therefore, the FCRA preempts these claims."); *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 429 (S.D.N.Y. 2010) (finding that the plaintiff's "state tort claims of breach of fiduciary duty and negligence based on [the defendant] allegedly making 'false statements to credit bureaus' and 'neglect[ing] to make true statements to credit bureaus' ... fall squarely within the subject matter regulated under § 1681s-2"); *Comunale v. Home Depot, U.S.A., Inc.*, 328 F.Supp.3d 70, 80-81 (W.D.N.Y. 2018) ("In sum, Plaintiff's state law causes of action, which are based upon Defendants' alleged "willful," "negligent," or "reckless" reporting of inaccurate information to the credit reporting agencies, are preempted by the FCRA, and insofar as Plaintiff's allegations could be construed as asserting a cause of action to enforce § 1681s-2(a), any such claim must be dismissed for lack of legal standing."); *Hasvold*, 194 F. Supp. 2d at 1239 ("The Court finds that federal law under the FCRA preempts plaintiff's claims against the

20

defendant relating to it as a furnisher of information. The Court finds that the defendant's motion to dismiss should be granted for failure to state a claim.").

C.    <u>Leave to Amend</u>

Leave to amend is not warranted because Plaintiffs have failed to "cure deficiencies by amendments previously allowed." *See Foman v. Davis*, 371 U.S. 178, 182-83 (1962); [ECF No. 36, 40] (denying Plaintiffs leave to amend). In specific, on October 22, 2018, Plaintiffs amended their Complaint, adding more specificity to their FCRA claims, while leaving their state law claims untouched. [ECF No. 22]. Further, Plaintiffs' "claims are substantively deficient and. . . Plaintiff[s] ha[ve] not presented any basis for the Court to believe [they] could allege facts that could withstand a 12(b)(6) motion." *Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 326 (D. Conn. 2017), *aff'd*, 918 F.3d 57 (2d Cir. 2019). "Accordingly, further leave to amend would be futile." *See id*; *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (ruling in an inmate's civil rights case that "the problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.").

<u>Conclusion</u>

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Count 1 for failure to state a claim. Additionally, Counts 2 through 4 are dismissed as they are preempted by the FCRA. Thus, the Court DIMSSES the Amended Complaint with prejudice. In light of this, Plaintiffs' Motion for Leave to File a Sur-Reply, [ECF No. 47], is denied as futile.

**The Clerk is directed to close this case.**

**IT IS SO ORDERED**

*Vanessa Lynne Bryant*  Vanessa Bryant
2019.09.05 17:39:25 -04'00'
_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: September 5, 2019.**